<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

JAMES SPENCER, *et al.*,

                    Plaintiffs,

v.

STARBUCKS*, et al.*,

                    Defendants.

Civil Action No: 23-3254 (SDW) (JBC)

**OPINION**

May 18, 2026

**WIGENTON**, District Judge.

Before this Court is Defendant Starbuck Corporation d/b/a Starbucks Coffee Company's ("Defendant" or "Starbucks") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 (D.E. 34 ("MSJ" or "Motion")) and Plaintiffs James and Barbara Spencer's ("Plaintiff")[1] Motion in Limine (D.E. 36.)  Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391.  This opinion is issued without oral argument pursuant to Rule 78.  For the reasons stated herein, Defendant's MSJ is **GRANTED** and Plaintiff's Motion in Limine is **DENIED**[2].

    I.    <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>[3]

---

[1] Although there are two Plaintiffs in this case, only James Spencer was directly involved in the incident.

[2] Under this District's local rules, a brief must include a table of contents and a table of authorities.  D.N.J. Loc. Civ. R. 7.2(b).  Here, Plaintiff's Opposition Brief (D.E. 36-2) includes neither and is non-compliant. In addition, Plaintiff's Motion in Limine was improperly submitted as part of his Opposition Brief and accordingly will not be considered.

[3] Facts cited in this Opinion are drawn from Defendant's Statement of Material Facts (D.E. 34-1), Plaintiff's Counterstatement of Material Facts (D.E. 36-1), and Defendant's Response to Plaintiff's Counterstatement of Facts (D.E. 43-1.)

This lawsuit stems from an incident where Plaintiff fell on the premises of Defendant Starbucks.  While there is no dispute about the occurrence of the fall or many of its related circumstances, the primary factual disputes concern the exact location of the fall and the conditions at that time.

A.  The February 25, 2021 Incident

On February 25, 2021, Plaintiff James Spencer, then 69 years old, entered a Starbucks café located in Clifton, New Jersey, a location familiar to him.  (D.E. 34-1 ¶¶ 1, 3.)  Due to wet conditions outside from melting snow, two rectangular runners were placed on the floor.  (*Id.* ¶¶ 2, 5, 7.)  These commercial-grade weather mats, with rubber bottoms and fuzzy tops, were intended to prevent slipping and keep debris out of the store.  (*Id.* ¶ 6.)  The first runner ("Runner 1") extended directly from the entrance to the mobile app pick-up area at the counter.  (*Id.* ¶¶ 8–9.)  The second runner ("Runner 2") was angled parallel to the counter, leading from the regular drink "hand-off" area to the register, located to the right at the back of the store.  (*Id.* ¶¶ 10–11.)  A Starbucks employee checked the cleanliness and placement of the runners every thirty minutes during business hours.  (*Id.* ¶ 12.)

On this day, after retrieving his order from the hand-off counter, Plaintiff turned to leave and tripped.  (*Id.* ¶ 13.)  He claims his foot caught on the edge of Runner 2.  (*Id.* ¶ 14.)  He did not notice any defects on the runners upon entering the store and claims that he could not see the floor at the time of his fall due to the drink holder tray he was carrying.  (*Id.* ¶ 19; D.E. 36-1 ¶ 19.)  Samuel Kline ("Kline"), a Starbucks shift supervisor, did not witness the fall but approached Plaintiff afterward.  (D.E. 34-1 ¶¶ 21–22.)  After the fall, Kline noticed a slightly curled corner on the left side of Runner 2.  (*Id.* ¶ 24.)  Defendant argues this is not where Plaintiff claims he tripped,

2

while Plaintiff claims it is.  (*Id.* ¶ 25; D.E. 36-1 ¶ 25.)  The parties further dispute whether the two runners overlapped on the date of the incident.  (D.E. 34-1 ¶ 26; D.E. 36-1 ¶ 26.)

B.  Report and Testimony of Plaintiff's Expert

During discovery, Plaintiff submitted a report by Mark Marpet ("Marpet"), an expert in ambulation safety.  (Marpet Dep. 12:5–13 (D.E. 34-9)); *see* Marpet Report (D.E. 34-10.))  Marpet claims that Plaintiff fell due to an upturned mat at the Starbucks café, suggesting that the mat's corner, possibly disturbed by foot traffic, caused the trip.  (Marpet Report at 5.)  He further opines that Defendant's failure to properly maintain the mats under busy conditions caused the fall.  (*Id.*)

C.  Procedural History

Plaintiffs commenced this action on February 13, 2023 in New Jersey Superior Court, Passaic County.  (D.E. 34-2 at 13.)  On February 21, 2023, Plaintiffs filed an Amended Complaint[4], asserting two counts of negligence claims against Defendant Starbucks (Counts I and III) and alleging that he tripped over a "defective carpet" at Starbucks, resulting in serious and permanent injuries, great pain and suffering, inability to engage in ordinary activities, and medical expenses. (*See generally* D.E. 1-1.)  Plaintiff's spouse, Barbara Spencer, also claimed loss of companionship and consortium due to these injuries (Count VI).  (*Id.* at 15–16.)  Defendant removed the case to this Court on June 14, 2023 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  (D.E. 1.)  On June 22, 2023, Defendant filed an answer denying liability and asserting several affirmative defenses. (D.E. 3.)  Timely discovery commenced, and on July 24, 2025, Defendant was granted leave to file the instant MSJ, with further discovery stayed pending the outcome of this MSJ.  (*See* D.E. 33.)

---

[4] Count II for negligent operation, maintenance, furnishment, and control of the premises, is alleged against unidentified and fictitious Defendants.  As such, Count II is dismissed with prejudice.

3

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party meets this initial burden, the burden then shifts to the nonmovant who "must set forth specific facts showing that there is a genuine issue for trial."  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).  The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as

4

a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. In considering a motion for summary judgment, this Court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson*, 477 U.S. at 255).

## III.   DISCUSSION

Defendant's MSJ challenges the sufficiency of all four of Plaintiff's negligence claims. Although they are distinct claims, they share the same elements of negligence and can therefore be assessed together.

### A.   Plaintiff has Failed to Establish that a Dangerous Condition Existed

A plaintiff asserting a negligence claim must demonstrate: (1) a duty of care; (2) breach of duty; (3) actual and proximate causation; and (4) damages. *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (quoting *Polzo v. Cnty. of Essex*, 960 A.2d 375, 384 (N.J. 2008)). Business owners owe their invitees a duty of reasonable care to provide a safe environment, which requires them to identify and eliminate dangerous conditions, safely maintain the premises, and avoid creating unsafe conditions. *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. 2003) (citing *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1113 (N.J. 1993) and *O'Shea v. K Mart Corp.*, 701 A.2d 475, 476 (N.J. Super. Ct. App. Div. 1997)). To prevail on a premises liability claim, a plaintiff must demonstrate that the dangerous condition posed an unreasonable risk of harm and that the defendant had actual or constructive notice of it. *Id.* A defendant is considered to have constructive notice if the dangerous condition has existed for long enough that a reasonably diligent person would have noticed and remedied it. *Garcia v. Walmart, Inc.*, No. 17-03118, 2021 WL 754006, at *5 (D.N.J. Feb. 26, 2021) (quoting *Troupe v. Burlington Coat Factory Warehouse*

5

*Corp.*, 129 A.3d 1111, 1114 (N.J. Super. Ct. App. Div. 2016)).  New Jersey courts have found carpets or runners to be dangerous conditions when they are defective, torn, or wet in some way. *See Bennett v. Hinrichsen*, 149 A. 126, 127 (N.J. 1930) (finding sufficient evidence to support the plaintiff's claim that the torn carpet created an unreasonably dangerous condition); *Risko v. Thompson Muller Auto. Grp., Inc.*, 20 A.3d 1123, 1126 (N.J. 2011) (affirming that a waterlogged plastic runner lying on top of the carpet, exposing some wet and exposed tile, created an unreasonably dangerous condition).  A post-incident observation of an overturned rug corner does not establish that the corner was overturned before the fall nor that it was the actual or proximate cause of the fall.  *Vaclavik v. Hackensack Meridian Health at Pascack Valley*, No. A-2765-23, 2025 WL 1482773, at *3 (N.J. Super. Ct. App. Div. May 23, 2025).

Here, Plaintiff was a business invitee as a customer at Starbucks.  (D.E. 34-1 ¶ 1.) However, the negligence claim fails at the threshold because he has failed to prove the existence of a dangerous condition, as there is insufficient evidence that the curled corner was present at the time of the fall.[5]  Similar to the plaintiff in *Vaclavik*, Plaintiff has not established that the runner's corner was turned over at the time of the fall, only relying on Kline's observation after the fall, which is insufficient to prove it was curled beforehand.  (*Id.* ¶ 24; D.E. 36-1 ¶ 24.)  Wet weather runners are common in businesses and do not inherently pose an unreasonable risk.  Additionally, Plaintiff admits that upon entering the store, he observed the runners to be flat and did not see any defects like tears or waterlogging of the runners.  (D.E. 34-1 ¶¶ 17, 19; D.E. 36-1 ¶¶ 17, 19.)

Even if Plaintiff could show that the dangerous condition existed at the time of the fall, there is no evidence that Defendant had actual or constructive notice of it.  Plaintiff has not

---

[5] Whether the alleged curled corner posed an unreasonable risk of harm is a question for the jury.  However, this Court need not address it at this time as Plaintiff has failed to carry his burden on preliminary elements.

established that any Starbucks employee saw a curled corner before the fall, nor is there evidence that it existed long enough to alert a Starbucks employee. According to Plaintiff's own testimony, he misstepped and caught his foot on the edge of a flat, non-defective runner, which does not amount to negligence by Starbucks. (D.E. 34-1 ¶¶ 13–14; D.E. 36-1 ¶¶ 13–14.)

### B. Plaintiff Cannot Establish Causation

Even if Plaintiff could prove that the curled corner of the carpet was a dangerous condition, he cannot establish that it was the proximate cause of his fall. Although proximate causation is usually determined by a jury, summary judgment on the issue is appropriate "where 'no reasonable jury could find that the plaintiff's injuries [have been] proximately caused by' the defendant's conduct." *Thompson v. Garden State Arts Ctr., Partners*, No. A-3299-05T5, 2007 WL 1598616, at *3 (N.J. Super. Ct. App. Div. June 5, 2007) (quoting *Vega by Muniz v. Piedilato*, 713 A.2d 442, 449 (N.J. 1998)).

Here, the primary defect that Plaintiff identifies in his Counterstatement of Material Facts is the curled *corner* of Runner 2, which was observed by Kline after the fall[6]. (*See generally* D.E. 36-1.) However, Plaintiff does not claim to have tripped on the corner, admitting instead that his foot caught the edge of the long side of Runner 2, not at a corner. (D.E. 34-1 ¶¶ 15–16; D.E. 36-1 ¶¶ 15–16.) His testimony supports this location, and he confirmed the exact spot of the fall on a marked diagram during his deposition, indicating an "X" on the long edge of Runner 2. (Pl.'s Dep. 92:18–25; 129:3–130:25 (D.E. 34-6); Pl.'s Dep. Ex. A (D.E. 34-7.)) Although Plaintiff disputes this fact, he provides no supporting evidence. (D.E. 36-1 ¶ 25.) Therefore, even if the corner was

---

[6] Plaintiff claims that Kline drew a diagram and described the runners as overlapping on the day of the incident but does not further support this argument. In his deposition, Kline testified that he does not remember whether the runners were touching on that day but stated that they "would have been not touching" based on their usual layout. (Kline Dep. 29:12–15 (D.E. 34-8.))

curled as Kline testified, Plaintiff cannot establish proximate causation, as there is no evidence linking the alleged dangerous condition to Plaintiff's injury.

    C.  <u>Mode of Operation Rule Does Not Apply</u>

The mode of operation rule is a narrow exception to the traditional premises liability requirement that a plaintiff must show that the defendant had actual or constructive notice of a dangerous condition. *Prioleau v. Kentucky Fried Chicken, Inc.*, 122 A.3d 328, 330 (N.J. 2015). Under this rule, a plaintiff may be entitled to a rebuttable inference of negligence without proving notice, but only in limited situations. *Id.* Four elements must be met in order for the mode of operation rule to apply: (1) the incident must occur in a "self-service setting[s], in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk"; (2) the incident must occur in an area affected by the business's self-service operations, with a connection between the self-service aspect and the risk of injury; (3) the dangerous condition must arise from customer negligence or "from the manner in which employees handled the business's products or equipment, or the inherent qualities of the merchandise itself"; (4) even where applicable, the rule provides an inference of negligence, shifting the burden to the defendant to prove reasonable care was exercised given the operational risks. *Id.* at 338–339. The rule is typically applied in cases involving loose items in open displays that might fall due to customer activity, creating a foreseeable risk. *See Nisivoccia*, 818 A.2d at 318 (applying the rule where the plaintiff slipped on a grape near the entry of the checkout line at a supermarket); *Wollerman v. Grand Union Stores, Inc.*, 221 A.2d 513, 514 (N.J. 1966) (applying the rule where the plaintiff stepped on a string bean and fell while shopping in the produce section at the defendant's supermarket); *Bozza v. Vornado, Inc.*, 200 A.2d 777, 779 (N.J. 1964) (applying

the rule where the plaintiff slipped and fell on a sticky, slimy substance after ordering a drink at a self-service cafeteria).  However, even in a self-service setting, the rule only applies if the dangerous condition is linked to the self-service nature of the business.  *Goldsack v. Wal-Mart Stores, Inc.*, No. 16-5354, 2018 WL 4300124, at *3 (D.N.J. Sept. 6, 2018); *see Prioleau*, 122 A.3d at 339.

Despite Plaintiff's arguments to the contrary, the mode of operation rule does not apply here because the incident did not occur in a self-service setting.  Plaintiff acknowledges that he fell by the counter where Starbucks customers collect their prepared drinks (hereinafter the "hand-off area").  (D.E. 34-1 ¶ 14; D.E. 36-1 ¶ 14.)  This area follows a "grab and go" style, where customers do not independently handle merchandise or interact with displays or shelving that might pose a risk.  (*See* Pl.'s Dep. Ex. A.)  Plaintiff's drinks were fully prepared by employees and placed on the counter for Plaintiff to pick up, without any assistance or contact from Plaintiff.  (Pl.'s Dep. 124:18–20.)  According to his own testimony, when Plaintiff wanted his drink remade, he handed it back to the barista, as he could not access the materials to remake it himself.  (*Id.* 77:3–19.)  The hand-off area is merely a place for finished drinks to be picked up, not a self-service setting where customers independently handle the merchandise.  To the extent that Plaintiff argues that the mobile pickup area is a self-service area triggering the mode of operation rule, this argument would also be misplaced as it is also a "grab and go" area where customers pick up fully prepared mobile orders.  Even if the hand-off area was considered a self-service area, the mode of operation rule still would not apply because the dangerous condition—the curled runner corner—is unrelated to the self-service nature of the business.  The runners are intended to prevent moisture and debris from entering the store when there is precipitation outside, not to facilitate any self-service features of the hand-off area.  (D.E. 34-1 ¶ 6; D.E. 36-1 ¶ 6.)

D.  Speculative Expert Testimony

Expert testimony is "'excluded if it is based merely on unfounded speculation and unquantified possibilities.'" *Townsend*, 110 A.3d at 63 (quoting *Grzanka v. Pfeifer*, 694 A.2d 295, 304 (N.J. Super. Ct. App. Div. 1997)).  The purpose of expert testimony is to assist the jury in understanding complex subjects, so experts must identify the factual bases for their conclusions, explain their methodology and demonstrate that both are reliable.  *Id.* (quoting *Landrigan v. Celotex Corp.*, 605 A.2d 1079, 1086 (N.J. 1992)); N.J.R.E. 702.

Here, Plaintiff cannot rely on the speculative and conclusory report and testimony of his expert, Mark Marpet, to overcome the critical issues of his case.  First, Marpet's report concludes that Defendant's half-hourly inspections were insufficient but does not provide any supporting facts or industry standards.  (Marpet Report at 5.)  Although he suggests more frequent monitoring might have detected the curled corner, he admits that he does not know when it became curled and suggests it could have resulted from the fall.  (*Id.*; Marpet Dep. 99:24–100:16.)  Additionally, Marpet concedes that he has seen no standards or data indicating that a 30-minute inspection interval is inadequate, basing his conclusion solely on the occurrence of the accident, which is not the correct standard in negligence cases.  (Marpet Dep. 100:17–101:21; *Long v. Landy*, 171 A.2d 1, 6 (N.J. 1961) ("The mere showing of an incident causing the injury sued upon is not alone sufficient to authorize the finding of an incident of negligence.")).  Second, Marpet acknowledges that his opinions are based solely on Plaintiff and Kline's testimony, and general assumptions about pedestrian activity, without examining the evidence and factual background himself. (Marpet Dep. 86:25–89:6; 68:25–69:2.)  His suggestion that Defendant could have used heavier mats or taped them down lacks any basis in applicable codes, standards or data, and he has not seen the runners in question nor knows their weight or dimensions to make such a claim.  (*Id.*

91:15–92:10; 68:25–69:2; 72:17–23.)  Marpet's report and testimony largely rationalize the fall as negligence without supporting facts, standards, or methods, failing to create a genuine issue of material fact.  Thus, the expert report and testimony cannot substitute for the necessary showing of a dangerous condition, notice, and proximate cause.  As Defendant has established that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, Defendant's MSJ is granted.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's MSJ is **GRANTED**.  Plaintiff's Motion in Limine is **DENIED**.  An appropriate order follows.

                              /s/ Susan D. Wigenton
                              **SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:    James B. Clark, U.S.M.J.
        Parties